UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VERONICA P. SILVA,

Plaintiff

-vs-

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL SECURITY[1],

Defendant.

DECISION AND ORDER

18-CV-6206 CJS

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant"), denying the application of Veronica Silva ("Plaintiff") for Social Security Disability Insurance ("SSDI") Benefits and Supplemental Security Income ("SSI") Benefits. Plaintiff claims to be completely disabled due to non-exertional mental impairments, but the Commissioner found otherwise. Now before the Court is Plaintiff's motion for judgment on the pleadings (Docket No. [#13]) and Defendant's cross-motion [#21] for the same relief. For the reasons discussed below, Plaintiff's motion is denied, Defendant's motion is granted, and this action is dismissed.

[1] The president nominated Andrew M. Saul to be Commissioner of Social Security and the Senate confirmed his appointment on June 4, 2019, vote number 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

## FACTUAL BACKGROUND

The reader is presumed to be familiar with the facts and lengthy procedural history of this action, including the Court's prior Decision and Order remanding the matter to the Commissioner for further administrative proceedings. *See, Silva v. Colvin*, No. 6:14-cv-6329 MAT, 2015 WL 5306005 at * 1 (W.D.N.Y. Sep. 10, 2015). The Court will briefly summarize the record as necessary for purposes of this Decision and Order.

On February 28, 2011, Plaintiff filed applications for SSI benefits and SSDI benefits, claiming that she became totally disabled on February 5, 2011.

It is undisputed that Plaintiff has mental impairments that are "severe" within the meaning of the Commissioner's regulations. Plaintiff suffered damage to the right frontal lobe of her brain at birth, as a result of being delivered by forceps in her country of birth, Ecuador. The record indicates that Plaintiff's biological father, a medical doctor, abandoned Plaintiff and her mother following the birth, due to his belief that Plaintiff had suffered brain damage during the birth. Plaintiff subsequently suffered from petit mal seizures throughout her childhood, for which she still takes medication. Plaintiff has been diagnosed with major depressive disorder, attention deficit hyperactivity disorder and a learning disorder. Treating doctors have also indicated that Plaintiff exhibits symptoms consistent with a condition resembling autism. Indeed, one treating doctor has opined that Plaintiff's is "a complex case that may represent an autistic spectrum disorder with prominent attention deficit, and that her depressive symptoms appear reactive at this point."[2] This same treating doctor noted Plaintiff's

[2] *Silva v. Colvin*, No. 6:14-cv-6329 MAT, 2015 WL 5306005 at * 1 (W.D.N.Y. Sep. 10, 2015) (citation to record and internal quotation marks omitted).

"odd features, dysconjugate gaze, odd affect, social anxiety and ritualistic behavior, such as walking in circles when anxious," and opined that Plaintiff's "social isolation and inappropriate affect point to autism spectrum disorder."[3] Treatment records indicate that Plaintiff reverses letters and numbers, has difficulty distinguishing left from right, has difficulty reading social cues, and has angry outbursts at times.

As alluded to earlier, this matter previously came before the Court to review the Commissioner's prior final decision denying benefits. The Court remanded the matter for, among other things, the ALJ's failure to properly apply the "treating physician rule."[4]

Following such remand, on April 5, 2017, the ALJ conducted a new hearing. On December 12, 2017, the ALJ issued a new decision, again denying Plaintiff's applications. In pertinent part, applying the familiar five-step analysis for evaluating disability claims, the ALJ found that Plaintiff has not engaged in substantial gainful

---

[3] *Silva v. Colvin*, 2015 WL 5306005 at *1 (citation to record and internal quotation marks omitted).

[4] The prior action was assigned to the Honorable Michael A. Telesca, Senior United States District Judge. On September 10, 2015, Judge Telesca granted Plaintiff's motion for judgment on the pleadings, and remanded the action to the Commissioner. In his decision, Judge Telesca found that the ALJ's decision to afford little weight to the opinion of Plaintiff's treating psychiatrist, Dr. Tullio Ortega, was erroneous for several reasons, including that it was impossible to say whether Ortega's opinion was inconsistent with his treatment notes, since Ortega's notes were almost entirely illegible. Judge Telesca further indicated that the ALJ's finding that Ortega's opinion was inconsistent with the opinion of consultative psychologist Kavitha Finnity, Ph.D. ("Finnity"), and with the opinion of Plaintiff's long-term therapist, Michael Boucher, LCSW-R ("Boucher") other evidence, was erroneous since it "relied upon parsed, selected portions of Dr. Finnity's and Mr. Boucher's opinions that provided support for the ALJ's RFC assessment," but "ignored aspects" of those same opinions that did not support the RFC finding. Judge Telesca further indicated that the ALJ's reliance on Ortega's GAF scores to discredit his opinion was erroneous, and that "it is improper for the ALJ to discount a treating physician opinion solely based on a comparison of it to the physician's treatment notes." Judge Telesca's decision concluded: "the matter is remanded for further administrative proceedings consistent with this decision. Specifically, the ALJ is directed to develop the record fully by having all of Dr. Ortega's treatment notes, reports, and questionnaires transcribed. The ALJ is then directed to evaluate Dr. Ortega's treating source opinions in light of the appropriate regulatory factors and in accordance with the case law discussed above, and re-assess the weight to be given Dr. Ortega's opinions. The ALJ also is directed to consider, as part of the record, the new evidence submitted to the Appeals Council by Plaintiff on appeal." *Silva v. Colvin*, 2015 WL 5306005, at *7.

activity since February 5, 2011; that she has severe impairments consisting of "degenerative disc disease of the lumbar spine, dyslexia, learning disorder, affective disorder and anxiety disorder," none of which meet or medically-equal a listed impairment; that she has the following RFC:

> The claimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant needs to avoid hazards, such as open waters or unprotected heights. She can adjust to occasional changes in work setting, and can make work-related decisions. She can perform simple, repetitive tasks, and maintain a regular schedule. She can focus on simple tasks for 2-hour periods, with brief moments to stretch and re-focus (up to 1 minute per hour). She can work to meet daily goals, but cannot maintain a fast-paced, automated production line pace. She cannot interact with the public, and cannot perform tandem/teamwork. She needs three additional, short, less-than-five-minute breaks, beyond regularly scheduled breaks[;][5]

that she cannot perform any past relevant work; but she can perform other work, including "laundry sorter," DOT 361.687-014, "photocopy machine operator," DOT 207.685-014, and "garment folder," DOT 789.687-066.

As part of the discussion of the Plaintiff's RFC, the ALJ acknowledged the serious nature of her impairments. For example, the ALJ stated:

> [Claimant] does not socialize, and has never had friends. She felt different in school and continues to feel isolated. The claimant attended college, but [is] unable to remember the name of her roommate. Because she does not socialize in person, the claimant interacts with others on the computer. She spends a significant portion of her day engaging with others in chat rooms. . . . [Claimant] needs to focus to recall details. However, she is able to remember things when she does concentrate. . . . The claimant is able to shower and dress by herself with reminders from her mother. She lives with her mother, who

[5] Transcript 563

> reportedly also tells the claimant what clothes to wear. . . . The claimant's [IQ] scores placed her in the borderline range of intellectual abilities. . . . However, the claimant's verbal abilities [are] fairly good, and even in English [(English is claimant's second language)], measured in the low, average range. . . . To address her mental health symptoms, the claimant has been prescribed a variety of medications, including Fluoxetine, Strattera, Depakote, and Seroquel.

Transcript 561-565.

Further, the ALJ acknowledged that several of Plaintiff's long-time treating sources have indicated that she is unable to work, due to her mental impairments. Nevertheless, when making the aforementioned RFC determination, the ALJ gave less-than-controlling weight to those opinions, after finding that they were inconsistent with the other evidence of record. In particular, the ALJ gave "limited weight" to the opinions of treating psychiatrist Tulio Ortega, M.D. ("Ortega") and treating physician Christopher Galbreath, D.O. ("Galbreath"), and "little weight" to the opinion of treating psychologist John Amos, Ph.D. ("Amos"). It is undisputed that if the opinions of Ortega, Galbreath and Amos were given controlling weight, Plaintiff would be found disabled.

However, the ALJ found that such opinions were inconsistent with other substantial evidence of record, namely, that despite her impairments Plaintiff attended college and earned her bachelor's degree, while also working almost full time over a period of ten years. The ALJ's reasoning may be summarized as follows: Immediately prior to the period of alleged disability, and despite her severe impairments, which did not subsequently worsen or change during the period of alleged disability, Plaintiff was able to work almost full-time for ten years, and was able to earn her bachelor's degree,

thereby contradicting the opinions of her treating doctors that she would be unable to do such things. In this regard, the ALJ stated in pertinent part:

> The claimant is a former cashier who alleges that she is disabled because of back problems, dyslexia, and anxiety. She worked as a cashier until February 2011. . . . Despite dyslexia, the claimant has a Bachelor's Degree. When she was in college, the claimant received accommodations because she is dyslexic. People took notes for her, and textbooks and exams were read to her. The claimant also took exams in an alternative, isolated site and received extra time. . . . She reportedly lost her job because she did not interact well with the customers. . . . The claimant ultimately attained her Bachelor's Degree while working part-time as a cashier. . . . Although Dr. Ortega is a treating physician and a specialist in psychiatry, the evidence of record does not support his opinion. Dr. Ortega treated the claimant from 2008 to 2012. During the majority of that time, the claimant was working part-time as a cashier and attending college. The claimant had worked as a cashier for almost ten years. At times, she worked as many as 30 hours per week. Her earnings from 2008 though 2010 were close to the threshold for substantial gainful activity. Thus, she was working a significant amount of time, albeit not at substantial gainful activity level, and attending college. Nothing in the record indicates that the claimant's mental functioning deteriorated from 2008 to 2011. . . . I [also] accord limited weight to the opinion of Dr. Galbreath. Again, the record does not show that the claimant's condition had deteriorated since she worked and attended college. . . . I [also] accord little weight to the opinion of Dr. Amos. . . . Notably, the doctor's opinion that the claimant has no ability to perform in a regular work setting with regard to remembering simple work-like procedures and maintaining attention for two-hour segments is inconsistent with the claimant's long history as a cashier and [her] success in obtaining a Bachelor's Degree. . . . The claimant clearly has limitations. However, the record does not show that her limitations are totally disabling. . . . Notably, the claimant has described activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant worked as a cashier in a supermarket for almost ten years. She generally worked about 30 hours per week. The claimant reported that she had difficulty functioning at work, but she maintained her job for almost ten years. While she

> worked as a cashier, the claimant also attended college. She took twelve college credits while working part-time and doing fieldwork in human services. She claimant also worked in a group home [as part of her educational coursework]. Her work [in the group home] was a class requirement, but she was paid wages. Although the claimant needed numerous educational accommodations and special help, she did ultimately attain her Bachelor's Degree. Although the claimant's mother testified that she must remind the claimant to engage in regular hygiene, the claimant lived in a dormitory when she was a student. In May 2011, the claimant stated that her mother had recently been in Ecuador and she functioned well by herself while her mother was gone.

Transcript 564-572.

Also as part of the ALJ's decision, she purported to give "more weight" to the opinion of consultative examining psychologist Kavitha Finnity, Ph.D. ("Finnity"), finding that it was consistent with the evidence concerning Plaintiff's actual work history and college experience. In this regard, the ALJ acknowledged Finnity's opinion that Plaintiff "has difficulty relating with others, dealing with stress, and maintaining attention/concentration."[6]

After receiving the ALJ's unfavorable ruling, Plaintiff appealed to the Appeals Council. However, the Appeals Council declined to review the ALJ's decision.

On March 12, 2018, Plaintiff commenced this action. On December 10, 2018, Plaintiff filed the subject motion [#13] for judgment on the pleadings. Plaintiff contends that the Commissioner's decision should be reversed for the following reasons: 1) "the ALJ failed to provide 'good reasons' for the rejection of three treating source opinions," referring to the opinions of Ortega, Galbreath and Amos ; and 2) the ALJ "cherry picked"

[6] Transcript 569

opinions from Finnity's report that are consistent with an ability to work, while ignoring other opinions in the same report that are not consistent with an ability to work.

## STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive." The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*

### The ALJ's Application of the "Good Reasons" Rule to the Opinions of Ortega, Galbreath and Amos

Plaintiff contends that the ALJ failed to provide "good reasons" for the weight that she assigned to the opinions of Ortega, Galbreath and Amos. It is well settled that

> [w]hatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527 (c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons" ' for the weight given to a treating source opinion." (quoting *Halloran* [*v. Barnhart*,] 362 F.3d [28,] 32 [(2d Cir. 2004)])). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific[.]

*Mojbel v. Comm'r of Soc. Sec.*, No. 1:18-CV-00400 EAW, 2019 WL 2417063, at *3

(W.D.N.Y. June 10, 2019)

Evidence that a claimant can do more than what her treating doctor says she can do, may provide a "good reason" for assigning less weight to the doctor's opinion. *See, e.g., Huyck v. Colvin*, No. 16-CV-6331P, 2017 WL 2957867, at *8 (W.D.N.Y. July 11, 2017) ("I conclude that the ALJ provided "good reasons" for her decision to assign limited weight to [Dr.] Devlin's and [Dr.] Norsky's opinions. In her decision, the ALJ accorded Devlin's opinions "very little weight" because they . . . were inconsistent with Huyck's own testimony that she would be able to engage in part-time sedentary work. . . . Further, the ALJ noted that many of the limitations assessed by Devlin were contradicted by other evidence in the record, particularly Huyck's own statements concerning her ability to perform activities of daily living. . . . Finally, *the ALJ recognized that the extreme limitations assessed by Devlin were inconsistent with Huyck's own testimony that she could perform a sedentary job on a part-time basis*.") (emphasis added; citations to record omitted); *see also, Varnum v. Colvin*, No. 15-CV-6269P, 2016 WL 4548383, at *14 (W.D.N.Y. Sept. 1, 2016) ("I conclude that the ALJ provided "good reasons" for his decision to assign limited weight to [Dr.] Choudhury's opinions. In his decision, the ALJ accorded Choudhury's opinions "little weight" because he found that they were inconsistent with Varnum's current work history [and] her testimony regarding her activities of daily living[.] . . . Specifically, the ALJ noted that the limitations assessed by Choudhury were inconsistent with Varnum's work history, including her current employment. During the hearing, Varnum testified that she had been employed in a part-time position for approximately six months. Varnum's

employment required her to sit at a receptionist desk to answer telephones and work on a computer for four hours each day, five days per week, without any breaks.") (citations to record omitted).

Evidence that a claimant was able to earn a college degree following the alleged onset of disability may also provide "good reason" to afford less weight to the opinion of a treating doctor indicating that the Plaintiff is unable to work. *See, e.g., Rapaport v. Comm'r of Soc. Sec.*, No. 16CV2617VSBJCF, 2018 WL 3122056, at *3–4 (S.D.N.Y. June 26, 2018) ("Plaintiff argues that the ALJ erred by considering Plaintiff's 'success' in college and graduate school and as a part time librarian in evaluating Plaintiff's RFC and weighing the opinion of Dr. Judka, Plaintiff's psychiatrist, who opined that Plaintiff was incapable of self-sustaining employment due to his developmental and psychological disorders. . . . [However,] ALJ Gonzalez properly assessed Dr. Judka's opinion in light of the record as a whole and provided sufficient reasons for not granting significant weight to the opinion, including describing the inconsistency of the opinion with Plaintiff's educational and vocational success.") (citations to record omitted). However, depending on the circumstances, the fact that a claimant attended college is not necessarily indicative of an ability to work on a sustained basis, or inconsistent with a treating doctor's opinion that the claimant is disabled. *See, e.g., Sudac v. Berryhill*, No. 3:18-CV-410 (JCH), 2019 WL 1856501, at *7 (D. Conn. Apr. 24, 2019) ("The record supports a finding that Sudac's ability to take part in college classes was predicated on a schedule that allowed him significant gaps in the day to address his IBS and paruresis symptoms. It is unclear how such a record contradicts, rather than supports, Dr.

Robinson's finding that Sudac would have difficulty completing a full workday or workweek without interruptions caused by his psychological symptoms. Because the ALJ did not point to evidence in the record that would support her conclusion, she failed to provide 'good reasons' for the weight afforded to Dr. Robinson's opinion.").

An ALJ may also properly consider a claimant's demonstrated ability to work part-time during the relevant period as evidence that the claimant is not completely disabled. *See*, 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *see also, Dyjewska v. Colvin*, No. 1:15-CV-00532(MAT), 2018 WL 703103, at *5 (W.D.N.Y. Feb. 3, 2018) ("Social Security regulations provide that employment 'during any period' of claimed disability may be probative of a claimant's ability to work. Thus, it would not have been impermissible for the ALJ to have drawn an adverse inference based on [the claimant's] ability to perform light-duty work, albeit on a part-time basis, during the period for which she claims to be totally disabled.") (citation omitted); *Bernard v. Colvin*, No. 2:14-CV-148-JMC, 2015 WL 4949300, at *7 (D. Vt. Aug. 19, 2015) ("The ALJ's consideration of this work activity—particularly the work done during the alleged disability period—was proper, even if the work was done on only a part-time basis."); *Durante v. Colvin*, No. 3:13CV1298 HBF, 2014 WL 4852881, at *20 (D. Conn. Aug. 7, 2014) ("[A]n ALJ's consideration of a claimant's part-time work is 'entirely proper' and may support an ALJ's decision to discount a claimant's credibility.") (citation omitted), report and recommendation adopted, No. 3:13-CV-1298 JCH, 2014 WL 4843684 (D. Conn. Sept. 29, 2014).

In the instant case, based on the discussion above the Court finds that the ALJ provided good reasons for the weight that she assigned to the opinions of Ortega, Galbreath and Amos. In that regard, the Court notes that the ALJ did not simply rely on the mere fact that Plaintiff earned her bachelor's degree, or the mere fact that Plaintiff worked part-time for almost ten years. The ALJ acknowledged that Plaintiff had needed accommodations at college, and that she had difficulties performing her cashier's job, such as difficulty dealing with certain customers, that ultimately led to her being fired. Indeed, the ALJ found that Plaintiff could not perform her past work as a cashier. However, the ALJ took Plaintiff's limitations into consideration and accounted for them in the RFC determination.

The ALJ's Alleged Selective Reliance on Dr. Finnity's Opinion

Plaintiff also contends that the ALJ "cherry picked" information from Dr. Finnity's report that supported her RFC finding, while ignoring Finnity's "statement that the results of her examination were consistent with Plaintiff's allegations, [Finnity's statement concerning] Plaintiff's complete inability to perform tasks requiring memory, [Finnity's] statement regarding [Plaintiff's] stress tolerance, and [Finnity's statement concerning] Plaintiff's inability to manage money."[7]

Of course, an ALJ is not permitted to "cherry pick" information in the manner that Plaintiff has alleged. *See, Bohart v. Astrue*, No. 10-CV-6503, 2011 WL 2516413, at *5 (W.D.N.Y. June 23, 2011) ("An ALJ cannot selectively choose the only portions of a medical opinion that support his determination, while ignoring others.") (citations

---

[7] Pl. Memo of Law [#13-1] at p. 27.

omitted).

Preliminarily, Plaintiff's contention that Finnity opined that Plaintiff had a "complete inability to perform tasks requiring memory" is incorrect. Rather, as the ALJ correctly observed, Finnity indicated only that Plaintiff's "memory skills were mildly impaired."[8]

Similarly, the ALJ expressly noted Finnity's opinion that Plaintiff would have difficulty "dealing with stress,"[9] as well as Plaintiff's own testimony that "she is unable to work under stressful conditions."[10] Accordingly, Plaintiff's suggestion that the ALJ ignored those facts is also incorrect. The ALJ considered them, but she also noted Finnity's opinion overall was that Plaintiff "would be able to perform simple tasks with some limitations."[11] The ALJ construed Finnity's opinion as limiting Plaintiff to "simple, repetitive tasks."[12] The ALJ stated that the RFC finding was "very limiting," but that there were still jobs Plaintiff could perform, according to the VE.[13]

To the extent that Plaintiff maintains that remand is required because the ALJ did not expressly mention Finnity's opinions that "[t]he results of the evaluation appear to be consistent with allegations" and that "[t]he claimant will need assistance to manage her funds," the Court disagrees. The ALJ is not required to discuss every single opinion contained in a consultative examiner's report, and, in any event, the ALJ noted that Plaintiff's own treating therapist, Michael Boucher, LCSW-R ("Boucher"), opined that

---

[8] Transcript at 224, 569.
[9] Transcript 569
[10] Transcript 564
[11] Transcript 569
[12] Transcript 563
[13] Transcript 572

Plaintiff is capable of handling her own money.[14]

In sum, Plaintiff's contention that the ALJ improperly "cherry picked" evidence from Finnity's report lacks merit.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings [#13] is denied, Defendant's motion [#21] is granted, and this matter is dismissed. The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
June 21, 2019

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

[14] Transcript 562 ("Her doctor stated that the claimant would be able to handle payment of her own benefits.")(referring to Transcript 963)